**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

HOLLIE WOLFE                                                                                                       PLAINTIFF

v.                                              No. 4:08CV04181 JLH

CLEAR TITLE, LLC, d/b/a
CLEAR TITLE OF ARKANSAS                                                                           DEFENDANT

**OPINION AND ORDER**

Hollie Wolfe brings this action against Clear Title, LLC, pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* Wolfe alleges that she worked many overtime hours as a nonexempt employee under the FLSA but was not paid for those hours. She also alleges that she was fired in retaliation for demanding overtime pay. Clear Title has filed a motion for summary judgment, and Wolfe has responded. For the following reasons, Clear Title's motion for summary judgment is denied.

**I.**

A court should enter summary judgment if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Cheshewalla v. Rand & Son Constr. Co.*, 415 F.3d 847, 850 (8th Cir. 2005). The moving party bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). If the moving party meets its burden, the nonmoving party must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106

S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1985) (quoting FED. R. CIV. P. 56(e)) (emphasis in original). A genuine issue exists only if there is sufficient evidence to allow a jury to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511.

## II.

Hollie Wolfe worked for Clear Title for several years until she was discharged on November 3, 2008. The complaint does not state her job title or titles, but it alleges and the answer admits that at some point she was "promoted to a position in the Escrow department." A promotion announcement submitted by Clear Title indicates that she was promoted to "escrow manager." She was paid a salary of $50,000 per year. Her job duties included preparing documents, ordering items needed for closing, working with lenders with regard to payoffs, working with title insurance companies, and dealing with clients. Less than one week before she was fired, she made a demand for overtime, which Clear Title refused. She alleges that the failure to pay overtime was willful, and she claims that she was terminated in retaliation for demanding that she be paid overtime. She seeks compensatory damages for three years prior to the date she filed her complaint, and she seeks punitive damages for the alleged retaliation.

## III.

In its motion for summary judgment, Clear Title argues that Wolfe was an administrative employee under the FLSA and was thus exempt from overtime compensation. Clear Title also argues that, even if Wolfe was not an exempt employee, it did not willfully violate the FLSA, and that the two-year statute of limitations should thus apply to Wolfe's claim. Finally, Clear Title contends that there is no evidence to support a claim for punitive damages and, moreover, punitive damages are not recoverable under the FLSA.

**A.     EXEMPT STATUS**

Clear Title argues that Wolfe is exempt from the FLSA's overtime pay requirements. The FLSA exempts "any employee employed in a bona fide . . . administrative capacity" from the overtime compensation requirement. 29 U.S.C. § 213(a)(1). An exempt administrative employee is someone: (1) who is compensated not less than $455 per week; (2) whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer; and (3) whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance. 29 C.F.R. § 541.200(a). The employer bears the burden of proving that the plaintiff is exempt from the requirement of overtime compensation. *Fife v. Harmon*, 171 F.3d 1173, 1174 (8th Cir. 1999).

It is undisputed that Wolfe earned more than $455 per week, so the first prong of the administrative exemption test is met. The parties dispute whether Wolfe's primary duties were directly related to Clear Title's management or general business operations and included the exercise of discretion and independent judgment with respect to matters of significance.

The requirements of the second prong of the administrative employee exemption are stated in 29 C.F.R. § 541.201, which provides:

> (a) To qualify for the administrative exemption, an employee's primary duty must be the performance of work directly related to the management or general business operations of the employer or the employer's customers. The phrase "directly related to the management or general business operations" refers to the type of work performed by the employee. To meet this requirement, an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment.
>
> (b) Work directly related to management or general business operations includes, but is not limited to, work in functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing;

research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities. Some of these activities may be performed by employees who also would qualify for another exemption.

(c) An employee may qualify for the administrative exemption if the employee's primary duty is the performance of work directly related to the management or general business operations of the employer's customers. Thus, for example, employees acting as advisers or consultants to their employer's clients or customers (as tax experts or financial consultants, for example) may be exempt.

Wolfe never worked with the human resources department, but otherwise the evidence before the Court does not show one way or the other whether Wolfe's duties fell within this provision. Clear Title has submitted an affidavit from James Patterson, president and chief executive officer of Clear Title during Wolfe's employment. Wolfe has submitted her own affidavit. The affidavits are in conflict. Patterson's affidavit reiterates Clear Title's arguments in its initial brief as well as the announcement of Wolfe's promotion to escrow manager, which Clear Title also submits as evidence. The promotion announcement says the escrow manager is responsible for escrow operations, employee training, escrow file audits and compliance, and being the point-of-contact for escrow accounting questions. Wolfe's affidavit admits to several of those job responsibilities, but Wolfe disputes that her job responsibilities were directly related to the management or general business operations of the employer or the employer's customers. Whether Wolfe's job responsibilities as described in Patterson's affidavit and the promotion announcement fall within 29 C.F.R. § 541.201 remains a disputed issue of fact.

As to the third prong of the administrative employee exemption, the Court must consider whether Wolfe exercised "discretion and independent judgment" in light of all the facts involved in her particular employment situation. 29 C.F.R. § 541.202(b). The Court may consider the following

factors:

> whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long- or short-term business objectives; whether the employee investigates and resolves matters of significance on behalf of management; and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances.

*Id.* The Department of Labor regulations also provide guidance to making a determination of whether an employee's duties require the exercise of discretion and independent judgment.

> The exercise of discretion and independent judgment implies that the employee has authority to make an independent choice, free from immediate direction or supervision. However, employees can exercise discretion and independent judgment even if their decisions or recommendations are reviewed at a higher level. Thus, the term "discretion and independent judgment" does not require that the decisions made by an employee have a finality that goes with unlimited authority and a complete absence of review. The decisions made as a result of the exercise of discretion and independent judgment may consist of recommendations for action rather than the actual taking of action. The fact that an employee's decision may be subject to review and that upon occasion the decisions are revised or reversed after review does not mean that the employee is not exercising discretion and independent judgment. For example, the policies formulated by the credit manager of a large corporation may be subject to review by higher company officials who may approve or disapprove these policies. The management consultant who has made a study of the operations of a business and who has drawn a proposed change in organization may have the plan reviewed or revised by superiors before it is submitted to the client.

29 C.F.R. § 541.202(c). Finally, the regulations provide guidance as to what exercising "discretion and independent judgment" does not include.

> The exercise of discretion and independent judgment must be more than the use of skill in applying well-established techniques, procedures or specific standards

>described in manuals or other sources. The exercise of discretion and independent judgment also does not include clerical or secretarial work, recording or tabulating data, or performing other mechanical, repetitive, recurrent or routine work. An employee who simply tabulates data is not exempt, even if labeled as a "statistician."

29 C.F.R. § 541.202(e). That an employee uses and applies manuals, guidelines, or the like does not preclude exemption.

>The use of manuals, guidelines or other established procedures containing or relating to highly technical, scientific, legal, financial or other similarly complex matters that can be understood or interpreted only by those with advanced or specialized knowledge or skills does not preclude exemption under section 13(a)(1) of the Act or the regulations in this part. Such manuals and procedures provide guidance in addressing difficult or novel circumstances and thus use of such reference material would not affect an employee's exempt status.

29 C.F.R. § 541.704.

Along with its reply brief, Clear Title submitted Patterson's affidavit, in which he essentially re-states Clear Title's arguments in its initial brief. Patterson says that Wolfe's job duties involved the regular exercise of discretion and independent judgment. Wolfe has submitted an affidavit that is to the contrary. Wolfe says that she had no authority to hire or fire anyone, had no employees whom she supervised or directed, had no authority to create or implement operating practices, had no involvement in planning for the business, and had no authority regarding how Clear Title conducted business. She says that her job duties "included adhering to well-established procedures and standards regarding real estate transactions, real estate closings, title insurance and title-related work, and escrow accounting."

Wolfe's affidavit is sufficient to create an issue of fact on the second and third prongs of the test for an exempt administrative employee. Therefore, Clear Title's motion for summary judgment is denied on the issue of whether Wolfe was an administrative employee exempt from the overtime provisions of the FLSA.

**B.    STATUTE OF LIMITATIONS**

An action for unpaid overtime compensation under the FLSA is "barred unless commenced within two years after the cause of action accrued." 29 U.S.C. § 255(a). However, "a cause of action arising out of a willful violation may be commenced within three years." *Id*. An FLSA violation is willful if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133-34, 108 S. Ct. 1677, 1681-82, 100 L. Ed. 2d 115 (1988).

Neither party has provided evidence on this point. Clear Title has the initial responsibility of demonstrating the absence of a genuine issue for trial. It has not met that burden. Therefore, the motion for summary judgment on the statute of limitations is denied.

**C.    PUNITIVE DAMAGES**

The prohibition on retaliation is stated in 29 U.S.C. § 215(a)(3), which makes it unlawful to discharge or in any other manner discriminate against any employee because the employee has filed a complaint or instituted or caused to be instituted a proceeding under the FLSA. The majority of circuits have held that this provision protects an employee who makes an internal complaint to the employer. *Kasten v. Saint-Gobain Performance Plastics Corp.*, 570 F.3d 834, 838 (7th Cir. 2009). The Eighth Circuit has interpreted the statute to prohibit discrimination against an employee who asserts or threatens to assert FLSA rights. *Brennan v. Maxey's Yamaha, Inc.*, 513 F.2d 179, 183 (8th Cir. 1975). That interpretation has been criticized as contrary to the plain language of subsection 215(a)(3). *See Kasten*, 570 F.3d at 840 (holding that the phrase "file any complaint" requires a plaintiff employee to submit some sort of writing). Needless to say, the holding of the Eighth Circuit in *Brennan v. Maxey's Yamaha, Inc.*, is binding on this Court. Here, the conduct of which Wolfe

complains falls within the prohibition of subsection 215(a)(3) as broadly interpreted by the Eighth Circuit.

The courts are divided on the issue of whether the FLSA provides for punitive damages for employees who are subject to retaliation for claiming their rights under that statutory scheme. The Seventh Circuit has held that punitive damages are available in FLSA retaliation cases. *Travis v. Gary Community Mental Health Ctr.*, 921 F.2d 108, 112 (7th Cir. 1990). The only other circuit to address the issue thus far is the Eleventh Circuit, which held that punitive damages are not available in FLSA retaliation cases. *Snapp v. Unlimited Concepts, Inc.*, 208 F.3d 928 (11th Cir. 2000), *cert. denied*, 532 U.S. 975, 121 S. Ct. 1609, 149 L. Ed. 2d 474 (2001).[1] The only district courts in the Eighth Circuit to address the issue are the Eastern and Western Districts of Missouri, and they, too, have reached opposite conclusions. The Eastern District of Missouri has followed the Eleventh Circuit in two cases. *Huang v. Gateway Hotel Holdings*, 520 F. Supp. 2d 1137, 1143 (E.D. Mo. 2007); *Tucker v. Monsanto Co.*, 2007 WL 1686957 (E.D. Mo. June 8, 2007). Even before the Eleventh Circuit decided *Snapp*, the Eastern District of Missouri had held, without discussion, that the FLSA does not provide for punitive damages in retaliation cases. *Waldermeyer v. ITT Consumer Fin. Corp.*, 782 F. Supp. 86, 88 (E.D. Mo. 1991). On the other hand, the Western District of Missouri followed the Seventh Circuit in one case decided before *Snapp*, *O'Brien v. Dekalb-Clinton Counties Ambulance Dist.*, 1996 WL 565817, at *6 (W.D. Mo. June 24, 1996) ("In the absence of conflicting interpretation of the amended section 16(b) by another circuit, the court is persuaded to

---

[1] The Ninth Circuit has affirmed an award of punitive damages in an FLSA-retaliation case but did not address the issue of whether the statute allows punitive damages. *Lambert v. Ackerley*, 180 F.3d 997, 1011 (9th Cir. 1999) ("Although the Seventh Circuit's reasoning [in *Travis*] is persuasive, we do not reach the question because the defendants have waived the issue of the availability of punitive damages by failing to raise it below.").

follow the Seventh Circuit's reasoning and hold that compensatory and punitive damages are available for violation of the FLSA's anti-retaliation provision."). *See also Johnston v. Davis Security, Inc.*, 217 F. Supp. 2d 1224, 1230-31 (D. Utah 2002) (holding that punitive damages are not recoverable under subsection 216(b)); *Lanza v. Sugarland Run Homeowners Ass'n, Inc.*, 97 F. Supp. 2d 737, 739-42 (E.D. Va. 2000) (same). *But see Marrow v. Allstate Sec. & Investigative Services*, 167 F. Supp. 2d 838, 842-46 (E.D. Pa. 2001) (holding that punitive damages are recoverable in a claim for retaliation under the FLSA).

The remedies for violating the FLSA are set out in 29 U.S.C. § 216. Subsection 216(a) provides:

> Any person who willfully violates any of the provisions of section 215 of this title shall upon conviction thereof be subject to a fine of not more than $10,000, or to imprisonment for not more than six months, or both. No person shall be imprisoned under this subsection except for an offense committed after the conviction of such person for a prior offense under this subsection.

Subsection 216(b) provides, in pertinent part:

> Any employer who violates the provisions of section 215(a)(3) of this title shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of this title, including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages.

In *Travis*, the Seventh Circuit held that this provision authorizes legal relief, "a term commonly understood to include compensatory and punitive damages." *Travis*, 921 F.2d at 111. Otherwise, the analysis in *Travis* was fairly cursory.

In *Snapp*, the Eleventh Circuit engaged in a lengthy, detailed analysis of the statutory scheme and arrived at a conclusion opposite from that reached in *Travis*. The court held in *Snapp* that the term "legal relief" ordinarily would include punitive damages, but interpreting the statute in the light

of the principle of *ejusdem generis*, the court said that the term "legal relief" in subsection 216(b) should be construed to include only compensatory relief, not punitive damages, because the specific items listed in that subsection as "legal or equitable relief" were all designed to make plaintiffs whole. *Snapp*, 208 F.3d at 934. The court also said that the statute was structured so that punitive sanctions were covered in subsection 216(a), while subsection 216(b) provided remedies for making aggrieved employees whole. *Id*. at 935.

The most thorough critique of the Eleventh Circuit's reasoning in *Snapp* appears to be the critique of the Eastern District of Pennsylvania in *Marrow*. There, the court said that application of the maxim of *ejusdem generis* to subsection 216(b) was inappropriate because the subsection prefaces its list of various forms of relief with the phrase "including *without limitation*." *Marrow*, 167 F. Supp. 2d at 844 (emphasis by the *Marrow* court). "The most sensible reading of that phrase leads to the conclusion that by listing several potential forms of relief, Congress did not mean to exclude others." *Id*. Moreover, *Marrow* reasoned, the purpose of subsection 215(a)(3) is not purely compensatory but is intended to deter employers from engaging in retaliation, so that limiting subsection 216(b) to remedies designed to make the plaintiff whole would not fully implement the intent of Congress. *Id*. The court in *Marrow* also found unpersuasive the argument that because Congress provided criminal sanctions in subsection 216(a) it could not have meant to include punitive damages in subsection 216(b). *Id*.

Although the issue is obviously not free from doubt, the undersigned is persuaded by the reasoning *Marrow*. Subsection 216(b) was drafted broadly to authorize "such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of this title, including without limitation . . . ." As *Snapp* noted:

10

> "Legal relief" is certainly a broad formulation. It would have almost no boundary were it not for the commonly understood decision between the "legal" and "equitable" powers of a court. Where such an expansive term is used, we look for clues within the statute to help us understand the exact nature of the "legal relief" that Congress intended; and we are not disappointed when we look to section 216(b).

*Snapp*, 208 F.3d at 934. The only limitation on the term "legal relief" stated in subsection 216(b) is that it be "appropriate to effectuate the purposes of section 215(a)(3) . . . ." The ordinary meaning of "legal relief" as including punitive damages is consistent with that limitation because punitive damages may be appropriate in some cases to effectuate the purposes of subsection 215(a)(3). It is contrary to the legislative intent, as expressed in this broadly worded provision, to exclude punitive damages from the relief authorized by subsection 216(b). The maxim of *ejusdem generis* is an aid to ascertaining legislative intent and should not be employed to defeat legislative intent, to make general words meaningless, or to reach a conclusion inconsistent with other rules of construction. *Donovan v. Anheuser-Busch, Inc.*, 666 F.2d 315, 326 (8th Cir. 1981); *United States v. Clark*, 646 F.2d 1259, 1265 (8th Cir. 1981).

Nor is the undersigned persuaded by the argument in *Snapp* that punitive sanctions are covered in subsection 216(a), while subsection 216(b) is designed to make plaintiffs whole. In *Snapp*, the court said, "Congress has already covered punitive damages in section 216(a); and there is simply no reason to carry the punitive element over from section 216(a) to section 216(b), a provision intended to compensate not punish." *Snapp*, 208 F.3d at 935. Section 216 has five subsections: subsection 216(a) provides for criminal sanctions; subsection 216(b) provides for civil actions by aggrieved employees; subsection 216(c) provides for civil actions by the Secretary of Labor to recover unpaid minimum wages or overtime compensation on behalf of employees to which those wages are owed; subsection 216(d) states certain narrow exceptions to "liability or

11

punishment" under the FLSA; and subsection 216(e) authorizes civil penalties for child labor violations. Section 216 is not structured so as to have a punishment section and a compensation section; instead, the structure includes a section providing for criminal prosecution by the government prosecuting attorneys, a section providing for civil actions by aggrieved employees, a section providing for civil actions by the Secretary of Labor to recover minimum wages and overtime on behalf of employees, and a section providing for civil penalties for child labor violations. The fact that in subsection 216(a) Congress provided criminal sanctions for willful violations of section 215 supports rather than undercuts the notion that the remedies available under subsection 216(b) include punitive damages, for it shows that Congress regarded willful violations as serious enough to warrant punishment and as a form of misconduct that stands in need of deterrence — which is to say that Congress determined that in some cases punishment would be "appropriate to effectuate the purposes of section 215(a)(3)." Moreover, that subsection 216(e) provides for penalties shows that subsection 216(a) was not intended as an exhaustive statement of the punishment available for violations of the FLSA.

In summary, subsection 216(b) was intended to authorize civil actions by aggrieved employees in which the employees could recover any form of legal or equitable relief that might be appropriate to effectuate the purposes of subsection 215(a)(3). In some cases, punitive damages might be appropriate to effectuate the purposes of that subsection. Therefore, punitive damages may in the proper case be recoverable under subsection 216(b).

The issue then is whether this is a proper case. The only pertinent evidence before the Court are the affidavits of Wolfe and Patterson. Wolfe says that she had always received favorable job reviews from her employer. However, she complained that she was not being paid overtime, and

less than one week later she was discharged. Patterson says that he repeatedly told Wolfe that she was being terminated because Clear Title was purchased by another company, which already had an escrow manager. Again, those affidavits are in conflict, with Patterson and Wolfe disputing what, if anything, Wolfe was told regarding the reasons for her termination. The Court does not believe that it would be appropriate to grant summary judgment on Wolfe's punitive damages claim. Therefore, the motion for summary judgment on that issue is denied.

## CONCLUSION

For the reasons stated above, Clear Title, LLC's motion for summary judgment is DENIED. Document #10.

IT IS SO ORDERED this 10th day of September, 2009.

*/s/ J. Leon Holmes*

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE